IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>GILBERT G. LUNDSTROM,<br><br>　　　　　　　Defendant. | 4:14CR3136<br><br>FINDINGS, RECOMMENDATION,<br>AND ORDER |

The government has moved for a hearing to determine whether the law firm of Koley Jesson LLP, has an impermissible conflict of interest in representing Defendant Gilbert G. Lundstrom. (Filing No. 32). The government explains that Gregory C. Scaglione, a partner within the Koley Jesson firm, has a possible conflict of interest because he represented not only the defendant, but also several people who may be called by the government to testify at Defendant's trial. (Filing No. 32). The government is not moving to disqualify Koley Jesson from representing the defendant. Rather, it has raised the issue so the court can examine the Sixth Amendment implications of Koley Jesson's continued representation of the defendant.

To evaluate the issues raised by the government's motion, the court convened two hearings, (Filing Nos. 50 & 57), and reviewed, *in camera*, retainer letters and a summary client list provided by the Koley Jesson firm. (Filing No. 54). The defendant attended both hearings and provided testimony under oath at the second. At the court's request, Scaglione has also investigated and advised the court of whether potential government witnesses previously represented by Koley Jesson currently object to that firm's representation of Defendant at trial.

For the reasons discussed below, subject to limitations, the undersigned magistrate judge finds Koley Jesson should not be precluded from representing Lundstrom.

STATEMENT OF FACTS

On June 4, 2010, the Office of Thrift Supervision closed TierOne Bank, and the FDIC was appointed Receiver. TierOne Corporation, the holding company which owned TierOne Bank, filed a voluntary petition for relief under Chapter 7 on June 24, 2010.

The TierOne Bank failure spawned several lawsuits and government investigations. As alleged in the indictment, Defendant Lundstrom served as TierOne's Chief Executive Officer ("CEO"), its highest ranking executive, until January of 2010, and "almost all of TierOne' employees ultimately reported to him." ([Filing No. 58, at CM/ECF p. 2, ¶ 5](#)). In January 2010, he resigned as CEO, but continued to serve on TierOne Bank's Board of Directors until March 2010.

Over five years ago, Lundstrom retained Koley Jesson to provide representation in all legal matters arising from the closing of TierOne Bank. In July of 2010, with Lundstrom's consent, Scaglione offered to represent other TierOne officers and directors whose interests were aligned with Lundstrom's. In response to this offer, David Hartman, Patricia Young, Larry Pfeil, Roger Ludemann, Eugene B. Witkowicz, Paula Luther, Gale R Furnas (now deceased), Eugene B. Witkowicz, and Don A. Langford retained Koley Jesson's representation in any case, investigation, or dispute "resulting from any allegations of misconduct or breach of duties concerning TierOne; and other potential claims that may arise or be asserted from the facts currently alleged," including any criminal matters. ([Filing No. 54, at CM/ECF p. 3](#), [6](#), [8](#), [18](#), [22](#), [30](#), [32](#)). The retainer letters explained:

> We have been engaged by Gilbert G. Lundstrom. It appears that your interests and the interests of Lundstrom are united in the defense of the various claims/suits and in efficiently utilizing the proceeds of the applicable policies. We believe that we can ethically represent Lundstrom and you, to provide an aggressive and unity defense effort. If an apparent

>or actual conflict arises between your interests and the interests of Lundstrom, if we can no longer provide independent judgment and zealous advocacy, or if you simply desire to engage different counsel, we will help you in making arrangements to transition smoothly to separate counsel. However, we will continue to represent Lundstrom, and you agree not to challenge our continued representation of Lundstrom.

(Filing No. 54, at CM/ECF p. 4, 9, 19, 21, 25, 29).

Thereafter, Koley Jesson firm provided representation to Lundstrom in ERISA litigation; SEC investigations; a security lawsuit; FDIC claims, proofs of claims, and notice of circumstances; TierOne Corporation bankruptcy proceedings; and a derivative action.

Of the TierOne executives previously represented by Koley Jesson, the government intends to call Hartman, Witkowicz, and Langford as witnesses.[1] Although Langford briefly retained Koley Jesson for representation during the SEC investigation, he quickly retained a different attorney and had very little contact with anyone from the Koley Jesson firm. Koley Jesson represented Witkowicz in ERISA, SEC, FDIC, and bankruptcy matters, and the firm represented Hartman during the SEC investigation and regarding FDIC issues. (Filing No. 54, at CM/ECF p. 1).

On December 9, 2014, a 15-count indictment was filed against Lundstrom alleging that in his capacity as an officer of TierOne Bank, he conspired to commit wire and mail fraud affecting a financial institution, conspired to commit securities fraud and falsify bank entries, devised and executed a mail fraud scheme, a wire fraud scheme, a securities fraud scheme, and falsified bank entries. (Filing No. 58). Langford, a former client of Koley Jesson, is an alleged co-conspirator.

---

[1] Each of these witnesses is now represented by separate counsel.

Scaglione, along with Daniel J. Collins, an experienced criminal defense attorney, represent Lundstrom. There are additional attorneys within Collins' firm who are experienced in representing criminal defendants and could assist with Lundstrom's representation. Nonetheless, Lundstrom asks that Scaglione remain his trial counsel, explaining that due to his five-year representation in matters involving the TierOne Bank failure, Scaglione has a thorough command of the facts and documents. Lundstrom argues he will be prejudiced if Scaglione is required to withdraw.

At the court's request, Koley Jesson contacted the current attorneys for Hartman, Witkowicz, and Langford to determine if these witnesses were willing to waive any conflict with Koley Jesson's representation of Lundstrom at trial. Hartman and Langford declined. Witkowicz agreed so long as Scaglione does not share any confidences or cross examine Witkowicz at trial.

Scaglione states that despite his best and repeated efforts, he cannot remember anything imparted to him by Langford, Witkowicz, or Hartman that the government does not already know. That is, the extensive business documents, along with the interview notes of the government's investigators, capture everything these clients told Scaglione. As to Langford specifically, he states the attorney-client relationship was very brief and limited—they exchanged pleasantries and nothing more.

Lundstrom has a Master's Degree in Business Administration and a law degree. He practiced law for 25 years. He understands the attorney-client privilege and a lawyer's ethical responsibilities when a conflict of interest arises. In preparation for the hearing regarding Scaglione's continuing representation, Lundstrom read the government's motion and the cases cited in the motion. He also conferred with Collins regarding Scaglione's potential conflict of interest. Lundstrom acknowledges that Scaglione would not be allowed to disclose confidential information obtained through

prior representation of a testifying witness even if that disclosure could assist in Lundstrom's defense: he understands Scaglione may be required to keep helpful but privileged information a secret. Lundstrom states he is not asking and will not ask Scaglione to divulge any secrets. Lundstrom waived any claim of ineffective assistance at trial, either on appeal or by collateral attack, arising from any possible conflict of interest Scaglione has or may encounter in representing Lundstrom at trial.

LEGAL ANALYSIS

A defendant in a criminal trial has a right to representation by the attorney he has chosen and retained, but this right is not absolute and must be balanced against the requirements of the fair and proper administration of justice. United States v. Micke, 859 F.2d 473, 480 (7th Cir. 1988). The assistance of counsel guaranteed by the Sixth Amendment contemplates that such assistance be unimpaired by a lawyer's simultaneous representation of conflicting interests. Austin v. Erickson, 477 F.2d 620, 624 (8th Cir. 1973). "Joint representation clouded by a conflict of interests may violate the Sixth Amendment's right to effective assistance of counsel." United States v. Brekke, 152 F.3d 1042, 1045 (8th Cir. 1998).

The Koley Jesson law firm represented witnesses the government intends to call to testify against Lundstrom at trial. A conflict of interest may arise when defense counsel has previously represented a prosecution witness. For example, defense counsel may fail to conduct a rigorous cross-examination for fear of misusing the confidential information. United States v. Flynn, 87 F.3d 996, 1001 (8th Cir. 1996). A defendant may not receive the full effort of his attorney if counsel's litigation decisions are influenced by obligations owed to persons other than the defendant. "[A]n attorney who cross-examines former clients inherently encounters divided loyalties." United States v. Moscony, 927 F.2d 742, 750 (3d Cir. 1991).

When a defendant is represented by conflicted counsel, the court must conduct a pretrial inquiry into the propriety of that representation, address the defendant personally, and advise him of the potential danger of proceeding with an attorney who has a conflict of interest. The defendant should have an opportunity and be at liberty to question the trial court on the nature and consequences of representation and the entire procedure should be placed on the record. Brekke, 152 F.3d at 1045 (citing United States v. Lawriw, 568 F.2d 98, 104 (8th Cir.1977)).

Lundstrom participated attended the hearings held before the court. At both, he stated he wanted Scaglione to represent him despite the conflict, and at the second, he stated he was waiving his right to challenge any conviction or sentence, on appeal or by collateral attack, based on a claim that Scaglione had a conflict of interest. A defendant "may waive his right to the assistance of an attorney unhindered by a conflict of interests," provided the waiver is "knowing, voluntary, and intelligent." Brekke, 152 F.3d at 1045 (citing Holloway v. Arkansas, 435 U.S. 475, 483 n. 5 (1978); United States v. Poston, 727 F.2d 734, 738 (8th Cir. 1984)). A trial court may refuse to allow a conflicted attorney to represent a defendant, even if the defendant waives the right to conflict-free representation. (Wheat v United States, 486 US 153 (1988)). But even if the waiver is not accepted, "[t]he chosen method for dealing with a potential conflict is to . . . alleviate the effects of the conflict while interfering the least with defendant's choice of counsel." Flynn, 87 F.3d at 1001.

Lundstrom wants Scaglione's continued representation, and for good reason— Scaglione has worked with the facts and documents underlying this criminal case for over five years and that working knowledge would be both highly difficult and expensive to replace. In addition, Lundstrom was the first to retain Scaglione, with witnesses Langford, Hartman, and Witkowicz benefiting from unified representation while agreeing

not to challenge Scaglione's continued representation of Lundstrom should a conflict later arise. Although Langford and Hartman now object, disqualifying Scaglione from Lundstrom's criminal case would be unfair and potentially prejudicial, particularly since Scaglione believes he possesses no confidential information that could be disclosed during the trial. Based on Scaglione's representations, the risk of any real conflict arising at trial appears low compared to the potential prejudice to Lundstrom if Scaglione is not permitted to assist in his representation.

Lundstrom has stated, under oath, that he fully understands that a conflict exists, and he has researched the law, conferred with separate counsel about the conflict, understands the trial risks the conflict may impose, and wants Scaglione to assist in his representation despite the conflict. The court finds Lundstrom's waiver is knowing; intelligent; and voluntary, including his waiver of any right to appeal or collaterally attack any conviction or sentence based on Scaglione's conflicted representation.

No one can predict how the trial will proceed. In addition, Langford and Hartman have not waived the conflict, and Witkowicz has conditionally waived it. But under the totality of circumstances presented, the court finds Scaglione should be permitted to represent the defendant at trial. He should not be permitted to cross-examine Langford, Hartman, or Witkowicz, or assist in outlining, suggesting, or drafting questions to be posed during their cross-examination. Scaglione should be allowed to remain at counsel table and assist the defendant, even while Langford, Hartman, or Witkowicz are testifying, but he is not permitted to disclose any client confidences obtained through his prior representation of these testifying witnesses. See United States v. Micke, 859 F.2d 473 (7th Cir. 1988).

The motion under consideration is not dispositive, but like a motion to suppress or to dismiss, it raises constitutional issues that may impact the trial proceedings. And

courts have reached contrary holdings under similar facts.  See, e.g., United States v. Stewart, 185 F.3d 112, 122 (3d Cir. 1999) (holding a law firm's representation of a defendant being prosecuted for mail and wire fraud, money laundering, and racketeering, and individuals who had agreed to testify against defendant created conflict of interest disqualified the firm even though the defendant had waived any conflicts:  The "institutional legitimacy of judicial proceedings, which includes a concern to shield a defendant from having his defense compromised by an attorney with divided loyalties, and allowing a defendant to be represented by the attorney of his choice, creates the disqualification.").  Finally, the parties are not really adversaries on this motion, so neither has an interest in filing an appeal for Judge Gerrard's consideration.  Under these circumstances, the undersigned magistrate judge will not enter an order, but rather findings and a recommendation so the matter can be reviewed fully by the assigned district judge.

Accordingly.

IT IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the Koley Jesson firm be allowed to continue representing the defendant subject to the limitations set forth in the above findings and recommendation.

The parties are notified that any objection to this recommendation must be filed in accordance with the local rules of this court.

IT IS ORDERED that:

1) Defendant's attorney, Daniel Collins, shall promptly discuss the above findings and recommendation with Defendant, and timely file any objection on his behalf.

2) Except as to the matter assigned to Attorney Collins under paragraph 1 of this order, while the above findings and recommendation are under consideration by

Judge Gerrard, the Koley Jesson firm may fully represent the defendant in preparing for trial subject to the limitations discussed in the above findings and recommendation.

September 21, 2015.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge