IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GILBERT G. LUNDSTROM,<br><br>Defendant. | 4:14-CR-3136<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on certain evidentiary objections made by the defendant, and the defendant's Fed. R. Crim. P. 29 motion. The Court will overrule the objections and admit the controverted evidence, and deny the defendant's Rule 29 motion.

At the outset of trial, the government identified for the defendant and the Court the seven individuals who, according to the government, were the defendant's co-conspirators. The defendant asked for "a blanket objection as to any statement elicited from the identified declarants," and the Court granted the defendant a continuing objection to any hearsay statements tendered from those individuals.

Over the defendant's objections the Court has, pursuant to *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978), conditionally admitted evidence of the hearsay statements alleged to have been made by six of the alleged co-conspirators: James Laphen, Gene Witkowicz, Gale Furnas, Don Langford, Tom McCool, and David Frances. (The Court notes, for housekeeping purposes, that the government also proffered David Hartman as an alleged co-conspirator; however, the Court is not aware of any hearsay statements offered into evidence that Hartman is alleged to have made.)

The government has offered these statements into evidence as co-conspirator's statements made in the course and in furtherance of the conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E). Alternatively, the government contends that the statements are admissible as the statements of an agent or employee under Rule 801(d)(2)(D), or for purposes other than the truth of the matter asserted.

To be fully admitted as co-conspirator's statements, the government must show by a preponderance of the evidence (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the

conspiracy. Pursuant to the *Bell* procedure, the Court now finds on the record that the government has met its burden of showing a conspiracy with respect to Lundstrom and Laphen, Witkowicz, Furnas, and Langford. The Court finds on the record that the government has not met that burden with respect to McCool and Frances. However, the Court finds that the statements of McCool and Frances are admissible on alternate grounds: Rule 801(d)(2)(D).

In making the determination of whether a declarant is a co-conspirator, the Court may consider the contents of the statements, although the government must also produce independent evidence outside of the statements themselves to establish the existence of the conspiracy. *United States v. Young*, 753 F.3d 757, 771 (8th Cir. 2014).

The independent evidence here includes the testimony of Anthony Jardieu, who testified that the OTS had warned the defendant and other TierOne employees that their appraisal methodology was lacking, and that the bank's investments were unsound. Jardieu further testified about the Supervisory Agreement TierOne and OTS entered into, which required TierOne to improve its practices, maintain an eight-and-a-half percent core capital ratio, and report to the OTS about its progress. Jardieu testified that TierOne reported that it had improved practices and exceeded that minimum ratio.

Next, Sarah Spiker, a TierOne employee, testified that she had reported to Furnas and Langford that some of the REO property was overvalued on TierOne's books, and that, consequently, TierOne was unable to sell the property at its asking price. She testified that nonetheless, Langford directed her not to reduce the selling price, and discouraged her from ordering new appraisals. She testified that Langford was instructed to do so by Laphen, Furnas, and Lundstrom. Similarly, Brian Kamler, another TierOne employee, testified that on one occasion, another employee named Ron Cheffer ordered a new appraisal and was chastised by Furnas as a result.

Laphen testified that TierOne agreed to comply with certain levels of core and risk-based capital, and would establish new appraisal procedures. However, Laphen testified that he, Lundstrom, Furnas, Langford, and others agreed to delay certain appraisals in order to delay recognition of losses, so that TierOne could maintain the required capital ratios. Additionally, Langford testified that Furnas informed him of the plan to delay appraisals by November of 2008 at the latest. He testified that he delayed obtaining these appraisals as a result, and that Furnas told him that Furnas was acting at the direction of Laphen and Lundstrom.

Laphen and others also testified that at a May 21, 2009 board meeting, Furnas and Langford presented analysis showing that TierOne needed, in

the best-case scenario, an additional $36 million in reserves to meet its required ratio. On the same day, TierOne issued a press release, signed by Lundstrom, that said TierOne met or exceeded its core capital ratio requirements. Judy Klinkman, an administrative assistant, testified that Lundstrom instructed her not to include information about Furnas' and Langford's presentation in the board meeting minutes sent to OTS pursuant to the Supervisory Agreement.

According to Laphen, at a meeting in July or August of 2009, Lundstrom said that the bank could not afford its expected losses. Afterward, Laphen testified that Witkowicz told him he had come up with a plan to reduce the reported losses by altering TierOne's financial statements. Thus, according to Laphen, TierOne's financial statements, certified by Witkowicz and Lundstrom, were untruthful. Those statements were submitted to OTS in late August of 2009. Additionally, according to FBI Special Agent Maseth's testimony, TierOne issued a press release on September 4, 2009 emphasizing that it continued to meet its required core capital ratio.

Taken together, the preponderance of the evidence shows the existence of a conspiracy to defraud, and that the defendant, Laphen, Witkowicz, Furnas, and Langford were members of the conspiracy. The Court also finds that each of the hearsay statements offered into evidence, from each of those declarants, was made during the course of and in furtherance of the conspiracy. In particular, Langford's testimony establishes that the conspiracy existed as far back as September of 2008, and Langford and Laphen's testimony establishes that it continued throughout 2009, and early 2010. That testimony is corroborated by the testimony of Spiker and Kamler, who testified that various of the alleged co-conspirators had ordered them to delay new appraisals.

Based on that evidence, the Court finds that the conspiracy existed between at least September of 2008 and into early 2010, encompassing the statements at issue. The Court further finds that the statements were made in furtherance of the conspiracy. Most of the statements directly furthered the conspiracy by arranging for TierOne to hide its losses from regulators and investments.

In sum, the Court finds by a preponderance of the evidence that (1) a conspiracy existed; (2) the defendant and declarants Laphen, Witkowicz, Furnas, and Langford were members of the conspiracy; and (3) that the declarations at issue were made during the course and in furtherance of the conspiracy.

Accordingly, their statements are admissible. They are not hearsay, pursuant to Fed. R. Evid. 801(d)(2)(E), nor are they barred by the Confrontation Clause, because the statements are not testimonial. *United*

*States v. Avila Vargas*, 570 F.3d 1004, 1008–09 (8th Cir. 2009). Whether the jury believes all, some, or none of that evidence is up to the jury—but it is enough to show that the statements were in the course of and in furtherance of the conspiracy, so the testimony shall be fully admitted.

However, the Court finds that McCool and Frances have not been shown to be members of the alleged conspiracy. While they may have been aware of the actions of the conspirators, and may even have followed the direction of the conspirators, they did so because the conspirators were their superiors at the Bank, not because of any shared intent to further the purposes of the conspiracy. And even if they could be said to have been part of the conspiracy, the statements proffered from McCool and Frances— primarily statements questioning the decisionmaking of their superiors at TierOne—cannot reasonably be said to have been made in furtherance of the conspiracy.

But, the Court finds, each of the declarants was an "agent or employee" of the defendant, and each of the statements which was brought into evidence was made on a matter within the scope of that employment relationship and while the relationship existed. The Court is persuaded by *United States v. Young*, 736 F.2d 565 (10th Cir. 1983), and several cases from other circuits supporting the same rule, that a statement made by a corporate employee and offered into evidence against another corporate employee may be admitted under Rule 801(d)(2)(D) if the evidence establishes the factors which normally make up an agency relationship. *See, e.g. United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010); *United States v. Poulin*, 461 F. App'x 272, 282 (4th Cir. 2012); *United States v. Agne*, 214 F.3d 47, 54 (1st Cir. 2000); *United States v. Wiedyk*, 71 F.3d 602, 606 (6th Cir. 1995); *Lippay v. Christos*, 996 F.2d 1490, 1498 (3d Cir. 1993); *Zaken v. Boerer*, 964 F.2d 1319, 1323 (2d Cir. 1992); *United States v. Paxson*, 861 F.2d 730, 734 (D.C. Cir. 1988); *United States v. Draiman*, 784 F.2d 248, 256–57 (7th Cir. 1986); *Crawford v. Garnier*, 719 F.2d 1317, 1324 (7th Cir. 1983).

The evidence is clear that the defendant was the CEO and Chairman of the Board of TierOne, and that he both had and exercised supervisory authority over each of the named declarants. (For the sake of completeness, that also includes Hartman, although no statements of Hartman appear to have been adduced.)

The defendant contends that Lundstrom was not in an agency relationship with either McCool or Frances. With respect to McCool, the defendant notes that he was an independent contractor, and argues that neither TierOne nor Lundstrom had the authority to direct his day-to-day activities. Furthermore, the defendant argues, Lundstrom was not McCool's direct supervisor. However, the evidence, particularly the testimony of

Langford, shows that McCool reported to Lundstrom, Laphen, Furnas, and Langford at nearly weekly problem loan meetings. At these meetings, McCool provided updates on the value of certain properties that TierOne owned, and sought direction and authorization on matters such as accepting offers to buy property and setting listing prices. The problem loan meeting participants, including Lundstrom, exercised substantial control over McCool's work on behalf of TierOne. For example, according to Langford's testimony, McCool restructured a loan to Randy Schams for the Eldorado Estates Subdivision in order to help TierOne avoid the necessity of obtaining a new appraisal for the subdivision. He did so despite his reservations regarding the wisdom of delaying appraisals, which he expressed to Langford via email.

Similarly, the defendant argues that Frances did not report directly to Lundstrom, and that Lundstrom did not direct his daily activities. Rather, Frances reported directly to Furnas and Langford. However, although Lundstrom may not have given orders directly to Frances, the evidence shows that he exercised significant control over Frances's daily activities through Furnas and Langford. For example, Frances testified that when he asked Furnas for permission to downgrade a loan, Furnas replied, "Gil will kill me if I do that." Furnas additionally told Frances that he was "a monkey on a string," which Frances understood to mean that Laphen and Lundstrom were directing Furnas's actions. Thus, even though Frances and Lundstrom seldom communicated directly, Lundstrom clearly directed Frances's day-to-day activities. Frances further testified that when he initially resigned from TierOne, Lundstrom personally convinced him to return by assuring him that the bank had a plan to raise capital and resolve issues with problem loans.

Therefore, the evidence demonstrates that the statements subject to the defendant's continuing objection were about TierOne business, while each of the declarants was still clearly working under the defendant's authority. So, the Court finds that the statements are admissible pursuant to Rule 801(d)(2)(D).

With respect to the Rule 29 motion: at a minimum, there is evidence, if believed by the trier of fact, that demonstrates that the defendant committed wire fraud affecting a financial institution, securities fraud, falsifying bank entries, conspiracy to commit wire fraud affecting a financial institution and securities fraud, and conspiracy to falsify bank entries. This evidence includes the testimony described above of Jardieu, Spiker, Kamler, Laphen, Klinkman, Langford, and Maseth. In addition, Agent Maseth testified to documents showing that Lundstrom made several handwritten edits to a corporate governance report prepared by Crowe Horwath, which downplayed, among other things, TierOne's core capital issues, and which were

incorporated into the final version of the report sent to the OTS in April of 2009.

Now, the finder of fact may believe all or portions of the above-referenced testimony, or none of it. Or the finder of fact may believe all, or portions of the testimony of the alleged co-conspirators and other witnesses, or none of it. But there is sufficient evidence, if believed, to sustain convictions for the four counts of wire fraud affecting a financial institution, one count of securities fraud, six counts of falsifying bank entries, one count of conspiracy to commit wire fraud affecting a financial institution and securities fraud, and one count of conspiracy to falsify bank entries.

IT IS ORDERED:

1.  The defendant's evidentiary objections to co-conspirator testimony are overruled to the extent set forth herein.

2.  Pursuant to *United States v. Bell*, the government's conditionally-admitted testimony is deemed admitted pursuant to Fed. R. Evid. 801(d)(2)(E) as to Laphen, Witkowicz, Furnas, and Langford.

3.  Pursuant to Fed. R. Evid. 801(d)(2)(D), the government's conditionally-admitted testimony is deemed admitted as to Frances and McCool.

4.  The defendant's Rule 29 motion is denied.

Dated this 2nd day of November, 2015.

BY THE COURT:

John M. Gerrard
United States District Judge