IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GILBERT G. LUNDSTROM,<br><br>Defendant. | 4:14-CR-3136<br><br>MEMORANDUM AND ORDER |

The defendant has filed two post-verdict motions: a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) (filing 184), and a motion for new trial pursuant to Fed. R. Crim. P. 33 (filing 186). For the reasons explained below, the Court will deny both motions, and this matter shall proceed to sentencing as scheduled on February 24, 2016.

## RULE 29(C) MOTION

On a motion for post-verdict acquittal, the Court views the evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. *United States v. Scofield*, 433 F.3d 580, 584–85 (8th Cir. 2006). The Court will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt. *Id.*

The defendant was convicted of conspiracy to commit wire fraud affecting a financial institution or securities fraud, conspiracy to falsify bank entries, three counts of wire fraud affecting a financial institution, one count of securities fraud, and six counts of falsifying bank entries. Filing 146. The defendant contends that for each convicted crime, the evidence was insufficient to show he had the requisite knowledge or criminal intent. Filing 185 at 3. First, he argues that there is insufficient evidence to demonstrate he directed a plan to delay ordering appraisals on certain properties for the purpose of deferring recognition of loss. Filing 185 at 4. Second, he argues that there is insufficient evidence to demonstrate he directed a plan to modify existing loans to conceal recognition of loss. Filing 185 at 9. Third, he argues that evidence of his alleged acts of concealment, alleged management style, and compensation is not proper evidence from which to infer knowledge or criminal intent. Filing 185 at 11.

(a) <u>Evidence that the defendant directed a plan to delay ordering appraisals</u>

The defendant argues that the government did not produce sufficient evidence that he directed a plan to delay ordering appraisals in order to defer recognition of loss. Filing 185 at 4. He argues the evidence was insufficient for three reasons: because none of the defendant's alleged co-conspirators testified that he directed them to delay ordering appraisals, because he was not responsible for ordering appraisals, and because TierOne disclosed to the Office of Thrift Supervision (OTS) its practice of discounting older appraisals based on market information. Filing 185 at 5–6.

First, the defendant contends that none of his alleged co-conspirators testified that he directed a plan to delay appraisals. Filing 185 at 6. To begin with, for the purposes of Rule 29 analysis, it is not necessary for the evidence to show that the defendant directed the scheme. The jury was instructed—without objection from the defendant—that to find the defendant guilty of the conspiracy counts, it would have to find beyond a reasonable doubt that there was an agreement to commit the underlying offense, and that the defendant voluntarily and intentionally joined the agreement, knowing its purpose. *See,* filing 142 at 24–27; T2359–60; *see also United States v. Hoelscher,* 764 F.2d 491, 494 (8th Cir. 1985) (setting forth the elements of conspiracy). In other words, evidence of agreement, not direction, was required.

And the government has produced evidence sufficient for a reasonable jury to make that finding. Jim Laphen testified that he participated in a plan to delay appraisals in order to "delay the taking of losses that probably would have been required if we got newer appraisals." T395. Laphen testified that he had a conversation with the defendant about this plan "in which [the defendant] was aware and a part of the process" and agreed with the plan. T394–96. Similarly, Don Langford testified that Gale Furnas told him the defendant knew of the plan to delay appraisals to defer recognition of loss. T1069. Langford also testified that Furnas told him the plan was "not [Furnas's] plan" but that "he was getting direction from the corner offices." T1042. Langford testified that "Mr. Lundstrom had one corner office and Mr. Laphen had the other." T1042.

The defendant argues that this testimony from Laphen and Langford fails to support the verdict primarily for two reasons. First, the defendant argues that there is no "direct evidence on any communication between Mr. Lundstrom and any member of these departments" showing that he directed or participated in the plan. *See* filing 185 at 6–8. But the government may rely on circumstantial evidence to prove conspiracy, and need not establish an "express or formal" agreement. *Hoelscher,* 764 F.2d at 494. Second, the defendant argues that Langford and Laphen gave other testimony during the

2

trial that is inconsistent with the testimony described above. Filing 185 at 6. However, it is the province of the jury to resolve inconsistencies and decide which testimony to believe. *See United States v. Scofield*, 433 F.3d 580, 585 (8th Cir. 2006).

Next, the defendant argues that the government's evidence is insufficient because the defendant was not responsible for ordering appraisals. Filing 185 at 5. For instance, Laphen testified that the decision whether to order appraisals ordinarily "would not have risen to executive management level." T397. However, this does not foreclose the likelihood that the defendant participated in a plan to delay appraisals; the jury was entitled to infer, based on the evidence described above, that although the defendant did not ordinarily participate in the ordering of appraisals, he did so on this particular occasion to delay recognition of losses.

Finally, the defendant contends that the government's evidence is insufficient because TierOne disclosed to the OTS its practice of discounting older appraisals based on market information. Filing 185 at 5–6. But even if this evidence could have permitted the jury to infer that the defendant did not agree to a plan to defer recognition of loss, the jury did not draw that inference. *See United States v. Chatmon*, 742 F.3d 350, 353 (8th Cir. 2014). When considering the sufficiency of the government's evidence on a Rule 29(c) motion, the Court may not re-weigh the evidence. *United States v. Moe*, 536 F.3d 825, 832 (8th Cir. 2008). The government's evidence "must be consistent with guilt, but [it] need not be inconsistent with any other reasonable hypothesis, and it is enough to convict if the entire body of evidence is sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." *United States v. Chavez*, 230 F.3d 1089, 1090 (8th Cir. 2000).

(b) <u>Evidence that the defendant directed a plan to modify existing loans</u>

The defendant next argues that there is insufficient evidence to demonstrate he directed a plan to modify the Towne Vistas and Mansions at Canyon Creek loans without ordering new appraisals in order to conceal losses. *See* filing 185 at 9–10. According to the defendant, although he signed off on those loan modifications, nothing demonstrates that he knew or intended that doing so would conceal TierOne's losses on those properties. *See* filing 185 at 9–10. But, as discussed above, the government produced evidence that the defendant participated in a plan to conceal losses. And Laphen testified that the Towne Vistas and Canyon Creek loans were two of TierOne's largest loans, T492; T526, that the defendant was aware the appraisals for these properties were stale, T819–20; T645, and that when Laphen discussed the Towne Vistas modifications with the defendant,

3

Laphen told the defendant that Laphen "wasn't sure we really even wanted to know what the value of the property was." T393. Under these circumstances, it was reasonable for the jury to find that the defendant signed the loan modifications with the intent and knowledge that doing so would conceal the losses associated with those investments.

(c) <u>Evidence of the defendant's alleged acts of concealment, management style, and compensation</u>

Next, the defendant argues that various forms of evidence that the government relied on to show knowledge and intent did not support such an inference. Filing 185 at 11. The defendant refers in particular to evidence regarding: the best/expected/worst case document, the corporate governance report, the TARP application, the defendant's management style, the defendant's compensation, and the defendant's signing of documents. Filing 185 at 11–15. The defendant is attempting a piecemeal rebuttal of the government's case. He offers alternate explanations for particular pieces of evidence and alternate theories for different actions taken by the defendant. He was entitled to—and did—make those arguments to the jury. But considered in the aggregate, the government's evidence is sufficient to support their theory of the case: that all of this evidence is explained by an intent to defraud.

(d) <u>Improperly admitted evidence</u>

Finally, the defendant argues that several documents containing impermissible hearsay were improperly admitted, and that the Court should not consider those documents in determining the sufficiency of the evidence supporting the verdict. Filing 185 at 16. As explained below with regard to the defendant's Rule 33 motion, no evidence was improperly admitted.

## RULE 33 MOTION

Upon the defendant's motion, the Court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). A motion for new trial is committed to the Court's discretion, and while the Court may weigh the evidence and disbelieve witnesses, the verdict must be allowed to stand unless the Court ultimately determines that a miscarriage of justice will occur. *United States v. Maybee*, 687 F.3d 1026, 1032 (8th Cir. 2012). A court should exercise its Rule 33 authority sparingly and with caution. *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009).

The defendant contends he is entitled to a new trial because the weight of the evidence was clearly against the verdict, hearsay evidence was improperly admitted under the agency exception, hearsay evidence was

4

improperly admitted from OTS exam reports, prior statements from unavailable witnesses were improperly excluded, improper jury instructions were given, the denial of a bill of particulars led to unfair surprise, and cumulative error necessitates a new trial. Filing 186 at 1–2. For the reasons explained below, none of these purported errors warrant a new trial.

(a) <u>The weight of the evidence</u>

First, the defendant argues he is entitled to a new trial because the verdict is against the weight of the evidence. Filing 187 at 2–4. Where a defendant moves for a new trial on the grounds that the verdict is against the weight of the evidence, the Court should grant the motion only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred. *United States v. McCraney,* 612 F.3d 1057, 1064 (8th Cir. 2010); *United States v. Bordeaux,* 570 F.3d 1041, 1048–49 (8th Cir. 2009).

For the reasons discussed in regard to the defendant's motion for acquittal, the Court finds that the verdict in this case is not against the weight of the evidence.

(b) <u>Hearsay evidence under the agency exception</u>

The defendant argues that the Court erred in admitting various hearsay statements made by Tom McCool and David Frances under the agency exception to the hearsay rule, Fed. R. Evid. 801(d)(2)(D). Filing 187 at 4. He contends that McCool and Frances were not his agents for the purposes of the exception because he did not control their day-to-day activities. Filing 187 at 9. The Court addressed this matter in its memorandum and order issued pursuant to the *Bell* procedure (filing 129). For the reasons explained in that order, the Court concludes that McCool and Frances acted as the defendant's agents, and their hearsay statements were properly admitted.

(c) <u>Hearsay evidence from the Office of Thrift Supervision reports</u>

The defendant next contends that the Court's admission of certain OTS exam reports was erroneous for three reasons: first, because the OTS reports were not admissible under the business records exception to the hearsay rule, Fed. R. Evid. 803(6); second, because the reports contained lay opinion testimony that is improper under Fed. R. Evid. 701; and third, because the reports should have been excluded under Fed. R. Evid. 403. Filing 187 at 15–16.

First, the defendant argues that the OTS reports were not admissible under the business records exception. As the Court recognized in the pretrial hearing on October 20, 2015, there is a circuit split with respect to whether an evaluative report prepared by a government agency may be admitted

5

against a criminal defendant under Rule 803(6). The public records exception, Fed. R. Evid. 803(8)(A)(iii), provides for the admission of evaluative reports only against the government in a criminal case. The Second and Ninth Circuits have reasoned that Congress's purpose in drafting Rule 803(8)(A)(iii) was to exclude *all* evaluative reports prepared by a government agency, and that to admit them under Rule 803(6) would circumvent that intent. *See, United States v. Oates*, 560 F.2d 45, 68–72 (2d Cir. 1977); *United States v. Orozco*, 590 F.2d 789, 793 (9th Cir. 1979).

The Seventh, Tenth, and Third Circuits disagree. *See, United States v. King*, 613 F.2d 670, 673 (7th Cir. 1980); *United States v. Hayes*, 861 F.2d 1225, 1320 (10th Cir. 1988); *United States v. Sokolow*, 91 F.3d 396, 405 (3d Cir. 1996). They reason that the purpose of Rule 803(8)(A)(iii) is to protect a defendant's Confrontation Clause rights. *See id.* According to this view, Congress's intent in drafting Rule 803(8)(A)(iii) was to ensure that a police report could not be admitted unless the responsible police officer testified. *Id.* Thus, those three circuits admit evaluative government reports under Rule 803(6) as long as the government agent who authored the report testifies. *Id.* The Eighth Circuit has not ruled on the question. *See United States v. Brown*, 315 F.3d 929, 932 n.2 (8th Cir. 2003).

The Court, as explained in the pretrial hearing, is persuaded by the reasoning of the Seventh, Tenth, and Third Circuits. Rule 803(6) expressly provides that it applies not just to businesses, but to any "organization." This broad wording includes government entities. And to the extent that admitting an evaluative government report under Rule 803(6) implicates the defendant's Confrontation Clause rights, the agents who drafted the reports—Kirk Teters and Anthony Jardieu—testified in this case.

Second, the defendant argues that certain OTS reports from 2008 and 2009 contained lay opinion evidence that is impermissible under Fed. R. Evid. 701. Filing 187 at 16. These reports contained the opinions of OTS examiners that TierOne was using problematic accounting practices, and that if TierOne did not improve these practices, it could be subject to regulatory action. T29–30. Accordingly, the Court admitted certain of these reports for the limited purpose of showing notice and motive. *See* T34. The Court instructed the jury on the limited purpose of these particular reports. In particular, at all requested and appropriate times, the Court instructed the jury,

> [Y]ou're about to hear evidence . . . that the Office of Thrift Supervision believe[s] that the Board and management of TierOne violated certain fiduciary duties and/or certain laws and regulations. I instruct you that this evidence is admitted only for

6

> the limited purpose of showing that notice of OTS's belief was communicated to Mr. Lundstrom, but not that such violations actually occurred. Therefore, you must consider it only for that limited purpose and not for any other purpose.

T1518; *see also, e.g.,* T1731; T898; T380. Because the opinions contained in these reports were offered for this limited purpose, it was not necessary that either OTS examiner be qualified as an expert.

Finally, the defendant contends that the reports should have been excluded under Fed. R. Evid. 403. Filing 187 at 16. But here, the probative value of the evidence was not substantially outweighed by a risk of unfair prejudice or confusing the jury. *See* filing 187 at 16. The evidence was highly probative of the defendant's state of mind, including both his knowledge of the bank's problems, and his potential motivations for the convicted conduct. And to the extent the evidence carried a risk of prejudicing or confusing the jury, this risk was mitigated by several redactions to the reports, T60–75, as well as the Court's limiting instructions.

(d) <u>Prior statements from unavailable witnesses</u>

Next, the defendant argues that the Court erred in refusing to admit deposition testimony taken by the SEC from two unavailable witnesses, Gale Furnas and Eugene Witkowicz. Filing 187 at 17–20. The defendant argues that some or all of this testimony should have been admitted pursuant to Fed. R. Evid. 804(b)(1), 804(b)(6), or 807. For the reasons explained in this Court's written order on the matter (filing 130), the Court concludes that this testimony was inadmissible hearsay and that none of the proposed exceptions apply.

(e) <u>Jury instructions</u>

The defendant argues that the Court erred in two ways with respect to the jury instructions: first, by granting the government's request for a willful blindness instruction; and second, by denying the defendant's advice of counsel instruction. Filing 187 at 20.

First, the defendant argues that the government failed to establish that a willful blindness instruction was warranted. Filing 187 at 20. For a willful blindness instruction to be appropriate, "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 131 S. Ct. 2060, 2070 (2011). The defendant argues that the government failed to fulfill the second requirement. Filing 187 at 21. According to the defendant, the government's

7

evidence "focused entirely on [the defendant's] supposed actual knowledge" of problems facing TierOne, and did not show that the defendant took steps to avoid acquiring such knowledge. Filing 187 at 21.

But as the Court explained during the formal instruction conference on November 5, 2015, the government has produced evidence that the defendant purposely disregarded or ignored certain information about loan deterioration, the need for timely charge-offs, and the need for new reserves to cover unreported losses on the bank's books. T2363. For example, the defendant testified that he received an email from McCool indicating that one of the Las Vegas loans was undercollateralized by $10 million. T2197. However, the defendant testified, he relied on Laphen's opinion that McCool was incorrect, and did not pursue the matter further. T2213. Similarly, the government produced evidence that the defendant failed to follow up on Frances's criticisms of various TierOne practices, such as relying on stale appraisals. For instance, in August 2009, Frances told Laphen in an email that TierOne had insufficient reserves, and that its practices could impact the accuracy of its publicly reported financial information. T925–926. The defendant testified that Laphen informed him of this email, but that "[i]t was just another Frances e-mail. I didn't follow up on it." T2082.

The defendant contends that evidence of this type does not demonstrate willful blindness, but rather shows that he "acknowledged and dealt with [TierOne's] challenges by delegating responsibility for particular issues" to TierOne employees. Filing 187 at 25–25. And that is one possible inference the jury could have made. But the jury was also entitled to infer that the defendant's actions—such as his reliance on Laphen's advice and his decision to disregard the opinions of McCool and Frances—constituted deliberate effort to avoid learning that TierOne's financial reports were inaccurate. Therefore, the willful blindness instruction was warranted by the evidence. And the fact that the government also produced evidence that Lundstrom had actual knowledge of TierOne's practices does not change this analysis; the government was entitled to proceed on alternate theories of liability.

With respect to the second issue, the defendant argues that the Court should have granted his request for an advice of counsel instruction. Filing 187 at 22. The advice of counsel instruction is warranted only when the defendant has produced evidence that he "(i) fully disclosed all material facts to his attorney before seeking advice; and (ii) actually relied on his counsel's advice in the good faith belief that his conduct was legal." *United States v. Rice,* 449 F.3d 887, 897 (8th Cir. 2006). A defendant is entitled to this instruction only if he produces evidence of each of these prerequisites. *Id.* at 896–97. Mere evidence that the defendant "consulted an attorney in connection with a particular transaction" is insufficient. *Id.* There was

evidence in this case that attorneys were consulted or involved at various points in time. But as the Court explained at the formal instruction conference, there was no evidence showing what specific advice the defendant received from counsel, or whether the defendant followed that advice. *See* T2365–66. Thus, the defendant was not entitled to an advice of counsel instruction.

(f) <u>Denial of a bill of particulars</u>

The defendant argues that the Court erred in denying his request for a bill of particulars. Filing 187 at 25–26. Specifically, the defendant contends he was unfairly surprised at trial because although the government alleged that the defendant made false statements in certain documents, it did not identify those statements with particularity. Filing 187 at 25–26. The Magistrate Judge denied the defendant's motion for a bill of particulars with respect to the original indictment (filing 44) and the defendant objected (filing 47). Before this Court ruled on the objection, the government filed a superseding indictment (filing 58). The defendant reiterated his motion for a bill of particulars (filing 68), and the Magistrate Judge denied it for the same reasons that applied to the original motion. Filing 78. The defendant objected (filing 91), and this Court overruled the objection (filing 102).

As the Magistrate Judge explained, a bill of particulars is appropriate only when allegations are so vague and conclusory the defendant lacks notice of the crimes he is charged with committing. Filing 44 at 7. It is "not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." Filing 44 at 7 (quoting *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009)). Here, the indictment, combined with the discovery provided by the government, was sufficient to put the defendant on notice of the charges against him. Thus, the Magistrate Judge's well-reasoned ruling was not clearly erroneous or contrary to law.[1]

(g) <u>Cumulative error</u>

Finally, the defendant contends that the issues above, considered in the aggregate, warrant a new trial even if each of the issues considered in isolation is insufficient. Filing 187 at 27. But, as the Court explained above, none of the issues the defendant has raised constitute error. Taken

---

[1] In addition, the Court notes that had the defendant been genuinely prejudiced by the government's identification of the alleged false statements at trial, instead of a few days before trial, then the appropriate response would have been to ask for a continuance at that point. But he did not do so.

individually or together, they did not "alter the course of [the] trial so as to violate [the defendant's] right to due process of law." *See* Filing 187 at 27.

IT IS ORDERED:

1. The defendant's motion for judgment of acquittal (filing 184) is denied.

2. The defendant's motion for new trial pursuant (filing 186) is denied.

Dated this 11th day of February, 2016.

BY THE COURT:

_____
John M. Gerrard
United States District Judge