IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>DON A. LANGFORD,<br><br>                Defendant. | 4:14-CR-3103<br><br>ORDER ON RESTITUTION |
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>JAMES A. LAPHEN,<br><br>                Defendant. | 4:14-CR-3133<br><br>ORDER ON RESTITUTION |
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>GILBERT G. LUNDSTROM,<br><br>                Defendant. | 4:14-CR-3136<br><br>ORDER ON RESTITUTION |

      This matter is before the Court to determine the defendants' restitution obligations pursuant to 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(II) and 18 U.S.C. § 3664. For the reasons explained below, the Court will order restitution in the total amount of $3,122,696. Gilbert G. Lundstrom, James A. Laphen, and Don A. Langford will be jointly and severally liable for $500,000 of that amount. And Lundstrom and Laphen shall be jointly and severally liable for the remaining $2,622,696. Specific payment schedules are set forth below.

*a. Amount of restitution*

First, the Court must determine the amount of restitution "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant[s]." 18 U.S.C. § 3664(f)(1)(A). Restitution in a fraud case is limited to the actual loss directly caused by the defendants' criminal conduct in the course of the scheme alleged in the indictment. *United States v. Chaika*, 695 F.3d 741, 748 (8th Cir. 2012). The government has the burden of demonstrating the amount of loss sustained by a victim as the result of the offense. 18 U.S.C. § 3664(e). The Court must resolve any dispute as to the amount or type of restitution by the preponderance of the evidence. 18 U.S.C. § 3664(e). And the Court notes that its restitution calculation is not controlled by the estimate of shareholder loss the Court previously calculated for the purpose of assessing Lundstrom's offense level under the Sentencing Guidelines; the two calculations serve different purposes, and are influenced by different factors. *See Chaika*, 695 F.3d at 748 (explaining that restitution is compensatory, not punitive).

Here, the government has produced evidence that total restitution in this case amounts to $3,122,696. Filing 237 at 2. This figure, it contends, represents the losses suffered by identified shareholders on shares of TierOne stock purchased during the fraud period, and sold after the disclosure of the fraud. *See* filing 229-3 at 6; *see also* filing 237 at 2 (explaining that the government used updated dates for the fraud period in its most recent calculation of restitution). As this Court has previously explained, the fraud period is between and including February 23 to November 10, 2009. Filing 240 at 147–49. February 23 is the date TierOne issued a press release fraudulently overstating its core and total risk-based capital ratios. That press release is the first instance of the defendants making fraudulent statements that shareholders could have acted in reliance upon—even though the *conspiracy* to defraud shareholders began months earlier. And November 10, as the Court has explained, is the date TierOne filed a Form 8-K disclosing its true financial state to shareholders.

The government's expert, Michael Petron, explained at the sentencing hearing that in calculating restitution, he relied on data and documents provided by the claims administrator in David G. Ray v. TierOne Corporation, et al., case no. 8:10-cv-199. Filing 240 at 44–45. Ray was a civil securities class action suit brought by shareholders against TierOne Corporation, Lundstrom, Laphen, and other TierOne executives. The court in that case approved a settlement that provided for partial compensation to individuals who purchased TierOne stock during "the class period"—August 9, 2007 through May 14, 2010—and suffered losses as a result. Ray, filing 102-1 at 9.

The claims administrator provided the government with claims and transaction data for each claimant in the class action case. Filing 240 at 44–45. From these documents, Petron determined which claimants in the class action suit had purchased shares during the fraud period, and then sold those shares after the disclosure of the fraud. *See*, filing 240 at 45; filing 229-3 at 6; *see also* filing 237 at 2. He then calculated how much money each of the claimants in that subgroup lost per share of TierOne stock they purchased during the fraud period and sold after the disclosure of the fraud. *See* filing 229-3 at 3–6 (offering a detailed explanation of Petron's methodology for performing that calculation).

Next, Petron considered to what extent the restitution awards to those claimants should be offset by the payments the defendants made pursuant to the class action settlement. Filing 237 at 3; filing 240 at 47. The entire class action settlement amounted to $3,100,000. Filing 234 at 5; Ray, filing 102-1 at 12. But, the government argues, not all of that amount should be included in the offset because not all of it compensated the particular losses suffered as a result of the offense conduct the defendants were convicted of here. Filing 237 at 3.

To begin with, some of the class action settlement was not paid to claimants directly; rather, a portion of the settlement went to attorney fees and other costs. Ray, filing 129. Next, the payments made to the claimants compensated a broader range of losses than those at issue here: the class period included the time between August 9, 2007 and May 14, 2010, while the fraud period included the time between February 23 and November 10, 2009.

To calculate the appropriate offset amount, Petron determined what amount had been paid in the class action settlement to each of the victims. Filing 240 at 47. Petron then divided the total settlement payment to each victim by the number of shares the victim purchased during the class period, to arrive at an average payment-per-share for each victim. Filing 240 at 47. Then, for each victim, he deducted that amount from the average loss the victim sustained per share of TierOne stock purchased during the fraud period and sold after the disclosure of the fraud (calculated as described above). Filing 240 at 47. He multiplied the resulting figure by the number of shares the victim purchased during the fraud period and sold after the disclosure of the fraud. *See* 229-3 at 6. The resulting figure, the government contends, represents the restitution owed to each victim. *See* 229-3 at 6. The total amount owed to all of the victims, the government submits, is $3,122,696. Filing 237 at 2.[1]

---

[1] The government did not identify any victims entitled to restitution aside from those identified by analyzing data produced by the claims administrator in Ray. Filing 237 at 7.

Lundstrom objects to this calculation for two primary reasons. First, Lundstrom argues that the amount fails "to account for any external market forces that caused the shareholders' losses in its restitution calculations." Filing 234 at 5. But as the Court explained with respect to its sentencing guideline calculations, the defendants' fraud did not cause shareholders to lose money by decreasing the value of TierOne's shares; it caused them to lose money by inducing them to purchase shares based on information that grossly overestimated the value of those shares. *See* filing 209 at 9–10. Additionally, the government has produced evidence demonstrating that the decline in TierOne's share price after the disclosure of the fraud was a result of the artificial inflation of those prices due to the fraud, rather than to fluctuating market forces. *See* filing 240 at 151–53. For these reasons, the Court finds that the restitution calculation need not be altered to account for external market forces.

Next, Lundstrom contends that the government has not adequately justified its reasoning for not crediting the entire $3.1 million class action settlement toward the restitution amount. Filing 234 at 5. At the very least, Lundstrom argues, the defendants are entitled to an offset of $754,536—the entire amount of settlement payments made to victims who purchased TierOne stock during the fraud period and sold the stock after the fraud was disclosed. Filing 238 at 5.

As described above, Petron did not credit all of the settlement payments the defendants made to the victims. Rather, he prorated them based on the percentage of the shares the victims purchased during the class period that were also purchased within the narrower fraud period. Lundstrom characterizes this method as arbitrary, arguing that "[t]he fact that the plaintiffs in the civil suit . . . alleged different dates is not a basis for the government to reduce their recovery. There was no admission that the dates identified in the civil complaint were correct." Filing 238 at 5.

But even though the defendants did not concede liability for the losses sustained during the class period, the defendants did agree to compensate the claimants for those losses. In other words, the defendants agreed to compensate the victims for a broader range of losses than those that will be

---

The government has described the procedures undertaken to notify and identify other potential victims: it has maintained and updated victim notification websites created for each of the defendant's criminal cases, surveyed victim impact statements provided by the probation office, and contacted potential victims by email. Filing 237 at 6–7. The Court is satisfied, based on the government's representations, that these measures were sufficient to provide notice and an opportunity to be heard to all potential victims of the defendants' offenses as required by law. *See* 18 U.S.C. § 3664(d)(2); 18 U.S.C. § 3771(a)(6) and (10); 42 U.S.C. § 10607(c)(1)(B).

compensated by restitution in this case. Offsetting restitution is appropriate only to avoid "double recovery for *the same loss* through both a restitution order and a civil judgment." *United States v. Manzer*, 69 F.3d 222, 230 (8th Cir. 1995) (emphasis added); *see* 18 U.S.C. § 3664 ("Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim."). Therefore, the Court may only offset its restitution award to the extent the civil settlement payment compensated the victims for the losses they sustained on shares purchased within the fraud period and sold afterward. Accordingly, the Court finds by a preponderance of the evidence that the total amount of restitution in this case amounts to $3,122,696.

*b. Apportionment of liability*

Next, while the Court is to order restitution in the full amount of each victim's losses,

> [i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

18 U.S.C. § 3664(h). The Court has considered the level of contribution of each defendant to the victim's losses, based on the substantial record in this case—particularly the trial testimony of Laphen and Langford—as well as the briefs submitted by the government and Lundstrom on the matter of restitution.

Additionally, the Court has fully considered the relative economic circumstances of each defendant, based on each defendant's presentence investigation report. Lundstrom has additionally requested that the Court consider a number of circumstances in evaluating his financial state: the extent to which the presentence investigation report included income and assets that are jointly owned with his wife or belong solely to his wife, the tax consequences that would accompany liquidating certain assets, his loss of Social Security income, his limited future earning potential, the financial needs of his wife, and his obligation to pay the $1.2 million fine imposed by this Court. Filing 234 at 1–4; filing 238 at 4. The Court has considered all of these factors. And although Laphen and Langford did not submit briefs on restitution, the Court has considered possible tax consequences, earning

potential and other factors that could influence their respective economic circumstances as well.

Having reviewed and considered all of these materials and arguments, the Court finds that Laphen and Lundstrom—as the president and CEO of TierOne, respectively—contributed equally to the victims' losses, and contributed to those losses to a greater extent than Langford. The Court also finds that Laphen and Lundstrom have considerably more financial resources than Langford. Accordingly, the Court concludes that all three defendants shall be jointly and severally liable for $500,000 of the total amount of restitution. Additionally, Laphen and Lundstrom shall be jointly and severally liable for the remaining $2,622,696.

*c. Payment schedule*

Finally, the Court must specify "the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). The Court may direct a defendant to "make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A).

In determining the payment schedule, the Court is to consider: "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligation to dependents." 18 U.S.C. § 3664(f)(2).

Here, as above, the Court has considered the presentence investigation reports of all of the defendants, along with the additional circumstances Lundstrom noted in his briefs on restitution, as well as all of the factors listed in § 3664(f)(2). Based on these considerations, the Court has concluded that the following payment schedule is appropriate. First, Lundstrom is ordered to make an initial payment of $1 million, followed by monthly payments of $2,500 until restitution is paid in full. Laphen is also ordered to make an initial payment of $1 million, followed by monthly payments of $2,500 until restitution is paid in full. Langford is ordered to make an initial payment of $25,000, followed by monthly payments of $100 or 3% of his gross income, whichever is greater, until restitution is paid in full.

Any payments made shall be applied in the following order of priority: special assessment; restitution; fine; and other penalties. Payments shall be distributed by the Clerk of the Court on a *pro rata* basis. All criminal monetary penalty payments, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, shall be made to the Clerk of the Court. Interest shall not accrue on the criminal

monetary penalty. The defendants shall inform the Court and the Attorney General of any material change in their economic circumstances affecting the ability to make monthly installments, or increase the monthly payment amount, as ordered by the Court. The United States Attorney is directed to provide the Clerk of the Court with the contact information for victims that is necessary to distribute restitution funds.

IT IS ORDERED:

1. Gilbert G. Lundstrom, James A. Laphen, and Don A. Langford are jointly and severally liable for $500,000 in restitution, and Lundstrom and Laphen shall be jointly and severally liable for the remaining $2,622,696.

2. Lundstrom is ordered to make an initial payment of $1 million, followed by monthly payments of $2,500 until restitution is paid in full.

3. Laphen is ordered to make an initial payment of $1 million, followed by monthly payments of $2,500 until restitution is paid in full.

4. Langford is ordered to make an initial payment of $25,000, followed by monthly payments of $100 or 3% of his gross income, whichever is greater, until restitution is paid in full.

5. All criminal monetary penalty payments, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, shall be made to the Clerk of the Court.

6. Payments made by the defendants shall be applied by the Clerk of the Court in the following order of priority: (1) special assessment, (2) restitution, (3) fine, and (4) other penalties.

7. The Clerk of the Court shall distribute restitution to the identified victims *pro rata*, based on the amounts set forth as "Loss Less Applied Civil Payment" in the government's final restitution summary, filing 237-1.

8.  The United States Attorney is directed to provide the Clerk of the Court with the necessary contact information for the identified victims listed in filing 237-1 so that the Clerk can to distribute restitution funds.

9.  The defendants shall inform the Court and the Attorney General of any material change in their economic circumstances affecting the ability to make monthly installments, or increase the monthly payment amount, as ordered by the Court.

Dated this 4th day of May, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge